IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00314-KDB-DSC

| | |
|---|---|
| THOMAS AUFIERO; CLIFTON VANN IV; AND LIVINGSTON & HAVEN, LLC,<br><br> Plaintiffs,<br><br>v.<br><br>BRIAN R. TIPTON; TRAVELERS CASUALTY SURETY COMPANY OF AMERICA; FLORIO PERRUCCI STEINHARDT & CAPPELLI, LLC; FLORIO PERRUCCI STEINHARDT TIPTON & TALOR, LLC.; FLORIO PERRUCCI STEINHARDT & FADER, LLC; AND PHILIP J. MORIN III,<br><br> Defendants. | **ORDER** |

 **THIS MATTER** is before the Court on the Motion to Dismiss for Lack of Jurisdiction by Florio Perrucci Steinhardt & Cappelli, LLC; Florio Perrucci Steinhardt & Fader, LLC; Florio Perrucci Steinhardt Tipton & Talor, LLC (together, the "Firm"); Philip J. Morin, III ("Morin"); and Brian R. Tipton ("Tipton") (collectively, the "Firm Defendants") (Doc. No. 12) and the Memorandum and Recommendation of the Honorable Magistrate Judge David S. Cayer ("M&R") entered August 31, 2020 (Doc. No. 31). Based on its de novo review of the M&R,

1

careful consideration of the Firm Defendants' Objection to the M&R[1] (Doc. No. 34) and an examination of the full record of these proceedings, the Court concludes that the recommendation to deny the Firm Defendants' Motion to Dismiss is correct, albeit on different grounds and with one exception.

In brief summary, the Court finds that while there is a split of authority that has not been resolved by the Fourth Circuit, the better rule holds that a lawyer's representation of an out-of-state client outside the client's home jurisdiction (including basic communications and litigation efforts into or in the client's home state) does not, standing alone, subject the lawyer to personal jurisdiction in the foreign jurisdiction. However, the Court agrees with the ultimate conclusion of the Magistrate Judge that the Court can properly exercise personal jurisdiction over Morin and his employer law firms under the unique facts of this action because Plaintiffs have sufficiently alleged circumstances that evidence connections to North Carolina beyond just remotely handling an out of state lawsuit for North Carolina clients. Further, the M&R correctly determines that this action should not be dismissed for improper venue.

The lone exception to this ruling is Defendant Tipton, for whom the Court finds that, notwithstanding the serious allegations of wrongdoing against him as managing partner of the law firms and counsel of record in the Pennsylvania lawsuit underlying Plaintiffs' claims of breach of fiduciary duty and malpractice,[2] there are insufficient allegations with respect to his personal connection to North Carolina for the Court to exercise personal jurisdiction over him.

---

[1] Plaintiffs did not file a response to the Objection to the M&R, requesting instead that the Court consider the M&R and their earlier memoranda and pleadings as their response.

[2] As discussed below, in addition to their claims against the Firm Defendants, Plaintiffs have brought claims of Breach of the Duty to Defend, Breach of Contract, Bad Faith and Unfair and Deceptive Trade Practices against their insurer Travelers Casualty and Surety Company of America (as well as a civil conspiracy claim against all defendants).

Accordingly, for the reasons and to the extent stated below, the findings and conclusions of the Magistrate Judge will be **ADOPTED** and the Firm Defendants' Motion to Dismiss will be **DENIED** as to all of the moving defendants except Brian R. Tipton, whose Motion to Dismiss will be **GRANTED** and the claims against him dismissed without prejudice.

## I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

When a court's personal jurisdiction is challenged, the question is one for the judge, with the burden on the plaintiff to prove the grounds for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993); *Carefirst of*

*Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In deciding whether the plaintiff has made the requisite showing, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff. *Id*.

Rule 4 of the Federal Rules of Civil Procedure prescribes that state law controls the extent to which a federal court may exercise personal jurisdiction over a defendant. Fed. R. Civ. P. 4(k)(1)(A). Accordingly, North Carolina's Long Arm Statute, N.C. Gen. Stat. Ann. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). Courts have long held, however, that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause; therefore, what would otherwise be a two-step analysis, *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990), essentially folds into one: "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (US 1945)).

4

To establish minimum contacts, a plaintiff may pursue either general or specific jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 711–12 (4th Cir. 2002). To establish general jurisdiction, the defendant's activities in the state must have been "continuous and systematic." *Id*. If specific jurisdiction is alleged (as in this case), the court exercises its power over a defendant when defendant's contacts within the state are the basis of the plaintiff's cause of action. *Id*.

In analyzing the contacts for specific jurisdiction, courts "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id*.; *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8 (1984). In conducting this inquiry, the Court must focus on "the quality and nature of [the relevant] contacts." *Nichols v. G.D. Searle & Co*., 783 F. Supp. 233, 238 (D.Md.1992), *aff'd*, 991 F.2d 1195 (4th Cir.1993). The Court should not "merely ... count the contacts and quantitatively compare this case to other preceding cases." *Id*. Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is not thereby offended. *Id*. (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)).

## II.      FACTS AND PROCEDURAL HISTORY

Plaintiff Livingston & Haven, LLC ("L&H") is a North Carolina limited liability company with its principal office and place of business located in Charlotte, North Carolina. (Doc. No. 26 (Skinner Decl.), ¶ 2.) It specializes in providing motion control products and systems for manufacturers and customers in the automation, hydraulic, pneumatic, lubrication

and connector industries. (Doc. No. 1-1 (Plaintiffs' Complaint), ¶ 14). In December 2013, Advanced Fluid Systems, Inc. ("AFS"), one of L&H's competitors, filed a civil action against L&H, Plaintiffs Thomas Aufiero and Clifton Vann, IV (collectively, the "L&H Plaintiffs") and other defendants in the United States District Court for the Middle District of Pennsylvania (the "AFS litigation" and/or "underlying litigation"). In that action, AFS alleged that the L&H Plaintiffs misappropriated AFS' confidential information and trade secrets and asserted numerous commercial tort and intellectual property claims against them. (*Id*. at ¶¶ 53, 55).

After being sued, the L&H Plaintiffs gave notice of the claims to Plaintiffs' insurer, Defendant Travelers Casualty and Surety Company of America ("Travelers"), and requested that Travelers assign Pennsylvania-licensed counsel Ronald L. Hicks, Jr. to represent them in the AFS litigation. (*Id*. at ¶ 56). However, exercising its right to select counsel in connection with its duty to defend its insureds under the governing North Carolina policy of insurance, Travelers declined to engage Mr. Hicks, instead retaining Morin, Tipton and their law firm Florio Perrucci Steinhardt & Fader, LLC to represent and defend Plaintiffs in the AFS litigation. (*Id*. at ¶ 58).

Morin was the primary attorney handling Plaintiffs' defense in the AFS litigation. (Doc. No. 12, (Certification of Philip J. Morin, III), ¶ 13). He is a resident of and licensed to practice law in New Jersey (but not Pennsylvania as discussed further below) and he does not have any significant professional or personal connection with North Carolina other than related to his work in the AFS litigation. (*Id*. at ¶¶ 2-5). Tipton is a New Jersey resident and the Firm's managing partner and chair of its litigation group. (Doc. No. 12, (Affidavit of Brian Tipton) at ¶¶ 9, 26). He has never been licensed to practice law in North Carolina and does not own property in the state. (*Id*., ¶¶ 5-6). He practices law primarily in the state and federal courts in New Jersey, Pennsylvania and New York. (Doc. 1-1, ¶ 27). Tipton was counsel of record in the

6

underlying litigation, supervised Morin, filed pleadings and other documents and participated in strategic decisions and correspondence, but, unlike Morin, did not travel to North Carolina to meet with Plaintiffs regarding the AFS litigation (Doc. 1-1, ¶ 10, 73; Doc. No. 12, Tipton Affidavit, ¶¶ 3, 18, 23).

At the outset of the litigation in January 2014, Travelers issued a reservation of rights letter to L&H advising that it had retained Morin and the Firm and asked Plaintiffs to cooperate with them. (Doc. 1-1, ¶ 58.) Travelers further advised that any fees or costs incurred by any other law firm for Plaintiffs would not be paid by Travelers. (*Id.* ¶¶ 57, 58). Nevertheless, L&H sought to determine if Morin and the Firm[3] could properly handle the matter (i.e. whether they should engage different counsel at their own expense). On January 24, 2014, Plaintiffs participated in two telephone conferences with Morin. (Doc. 26, ¶ 10; Doc. 20, ¶ 12.) During the calls, Morin was asked about his qualifications and ability to handle the type of claims asserted in the AFS Litigation. (Doc. 26, ¶ 11; Doc. 20, ¶ 12.) Morin assured Plaintiffs that he was more than capable of effectively representing Plaintiffs in the underlying litigation but did not disclose that he was not licensed to practice law in Pennsylvania or the United States District Court for the Middle District of Pennsylvania nor did he disclose various attorney disciplinary findings against him in New Jersey and New York. (*Id.*)[4] As a result of those conversations and in reliance on Morin's

---

[3] Plaintiffs allege that they did not find out until after trial that Tipton rather than Morin was counsel of record, and Tipton did not participate in these initial calls.

[4] Also, Morin, Tipton and the Firm allegedly never disclosed that, while representing Plaintiffs, Morin received a public reprimand on July 11, 2014 from the New Jersey Supreme Court, (Doc. No. 1-1, ¶ 68; Exhibit 4 to Skinner Decl.) and that on August 27, 2015, the New York Appellate Division Third Department suspended Morin's license to practice law for a period of 90 days, and further ordered that during the suspension, Morin was to refrain from the practice of law in any form, forbidden to appear as an attorney or counselor-at-law before any court, and forbidden to give to another an opinion as to the law or its application. (*Id.*, ¶ 69; Exhibit 4 to Skinner Decl.)

7

assurances and Travelers asserted rights under the insurance policy, Plaintiffs accepted Morin and the Firm as their attorney. (Doc. 26, ¶ 13; Doc. 20, ¶ 14.)

The AFS litigation spanned a period of approximately four years with extensive discovery and motion practice before ultimately proceeding to a bench trial. Morin regularly communicated with Plaintiffs in North Carolina via email and telephone during the litigation. Although the claims and defenses in the underlying litigation were based on Pennsylvania and/or federal law, Morin retained Martin White, a North Carolina lawyer, as "local counsel" or "co-counsel" to provide substantial assistance in discovery and other litigation efforts throughout the case. (See Doc. 21 (Affidavit of Martin White), ¶¶ 8-11.) Also, during the litigation Morin traveled to North Carolina to meet with Plaintiffs to prepare for and defend six depositions and, separately, to meet for trial preparation. (Doc. 12, Morin, ¶ 19).

Following a bench trial (and after the Firm Defendants failed to file any post-trial findings of fact or conclusions of law for Plaintiffs), the Pennsylvania federal district court entered an order and judgment on March 6, 2018 finding Plaintiffs liable under Pennsylvania law on AFS' claim for trade secret misappropriation, and L&H and Vann liable for AFS' claim for aiding and abetting breach of fiduciary duty. (Doc. No. 1-1, ¶ 99). Substantial compensatory and punitive damages were awarded against the L&H Plaintiffs.

On May 5, 2020, Plaintiffs filed a state court action in Mecklenburg County Superior Court asserting claims for breach of the duty to defend, breach of contract, breach of fiduciary duty, legal malpractice and other claims against Travelers and the Firm Defendants. On June 4, 2020, Defendants removed the action to this Court based upon diversity of citizenship, and

8

thereafter the Firm Defendants moved to dismiss for lack of personal jurisdiction and improper venue pursuant to FRCP 12(b)(2) and 12(b)(3) or alternatively to transfer venue to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

### III. DISCUSSION

The parties generally do not dispute the broad legal principles and factors the Court must consider in determining whether it has personal jurisdiction over the Defendants. Rather, their dispute is over the application of those well-established tests. As noted above, this Court must "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009); *ALS Scan,* 293 F.3d at 711–12. Significantly, even with the aid of these factors, this analysis is heavily fact-dependent and "not susceptible to mechanical application" of any test. *Id.*

Defendants' primary argument is that they have not purposely availed themselves of the privilege of conducting activities in North Carolina. In considering "purposeful availment," courts consider a variety of factors, including: "(1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities within the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties'

9

communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." *Consulting Engineers,* 561 F.3d at 278.

Some of these factors favor the Defendants. They do not maintain offices, do not own property and did not have any prior connection to North Carolina. However, other factors favor the Plaintiffs, most particularly with respect to Morin and the Firm. Those defendants deliberately engaged in significant or long-term business activities within the forum state, made in-person contact with the L&H Plaintiffs in North Carolina related to their business relationship, had extensive communications about the litigation in North Carolina and partially engaged in their contractual duties in North Carolina. As to the remaining factors, the parties dispute whether the Firm Defendants "solicited" L&H's business and there is no allegation as to any contractual agreement on which state's law would govern their engagement. Thus, the Court must compare all these respective contacts, accepting the alleged jurisdictional facts as true along with all reasonable inferences.

"Where performance under a contract was intended to be performed outside of the forum in question, courts have been reluctant to assert personal jurisdiction over nonresident defendants." *WLC, LLC*, 454 F. Supp. 2d at 438; *see e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000) (finding no personal jurisdiction where the contract called for performance predominantly outside of the forum state, even though some acts necessitated its contact with the forum). The question before the Court is whether and how this rule should apply to an attorney-client relationship with regular and ongoing communications and occasional meetings between an attorney and out-of-state client.

As noted in the M&R, there is a split of authority on the question of whether a law firm that is engaged to represent an out-of-state client in litigation outside the client's home

10

Case 3:20-cv-00314-KDB-DSC    Document 35    Filed 10/22/20    Page 10 of 19

jurisdiction is subject to personal jurisdiction in malpractice litigation related to the engagement where the client lives. M&R at 5, citing *Newsome v. Gallacher*, 722 F.3d 1257, 1280 (10th Cir. 2013). In recommending that the Court find that it has personal jurisdiction over the Firm Defendants, the M&R found persuasive the reasoning of courts that exercise jurisdiction over out-of-state law firms, including "that attorneys can accept or reject representing clients in distant forums," "those who accept such representation have 'fair warning' that they might be sued for malpractice in the client's forum, and "the normal communications that make up an active attorney-client relationship are the sort of repeated, purposeful contacts with the client's home forum sufficient to establish personal jurisdiction." *Id*. at 5-6. Plaintiffs cite additional authority in support of a broad view of exercising personal jurisdiction over out-of-state counsel. *See* Doc. No. 19 at 13-14, citing, *inter alia*, *KCI Mgmt. Corp. v. Posternak, Blankenstein & Lund, LLP*, No. 2:03-1633-23, 2005 U.S. Dist. LEXIS 42586, at *11 (D.S.C. Aug. 8, 2005) (finding that Massachusetts attorneys had purposefully availed themselves of South Carolina through regular communications and billing with South Carolina clients over a 7 year attorney-client relationship, concluding "[t]hese contacts with [the forum state] were purposeful and repeated; they were not 'random, fortuitous, or attenuated.'" *Id.* at 12-13 (quoting *Burger King Corp. v.Rudzewicz*, 471 U.S. 462, 472 (1985))).

In response, Defendants claim that the "majority"[5] rule holds otherwise. *See* Doc. No. 34 at 7-10 (citing *Smith v. Goldberg*, No. 3:18-3011-JMC-PJG, 2019 U.S. Dist. LEXIS 98680, at *4-7 (D.S.C. Mar. 20, 2019) (communications from and payments to an out-of-state of attorney

---

[5] In the absence of controlling precedent from the Fourth Circuit, which has not been cited by either party, the Court's task is not to simply identify the most prevalent view on an issue, but rather to seek to find the best reasoned rule, whether or not it is in the "majority" or "minority" of the split authority.

related to litigation that was pending outside of South Carolina insufficient to establish personal jurisdiction, finding "such incidental contact related to out-of-state litigation is not sufficient to satisfy the purposeful availment standard for specific jurisdiction")); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987) ("numerous calls," the "use of courier services," "monthly billings mailed to South Dakota, and checks paid by a South Dakota bank," and a three-day visit to South Dakota to review and inspect documents insufficient to establish purposeful availment of the laws of South Dakota where the circumstances of the underlying litigation did not arise in South Dakota); *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) (out-of-state law firm not subject to personal jurisdiction in California based solely on normal communications, including in person visits, related to out-of-state litigation but personal jurisdiction found based on totality of circumstances); *Cape v. von Maur*, 932 F. Supp. 124, 126 (D. Md. 1996) (No personal jurisdiction where defendant lawyers' only contacts with the State of Maryland consisted of phone calls and correspondence between them in Germany and their clients in Maryland).

While the Court agrees that a lawyer's decision to accept an engagement with an out-of-state client and the subsequent handling of the matter reflects a purposeful decision to do business with that client which cannot fairly be considered "random" or "fortuitous," the Court agrees with those cases that hold that the handling of a legal matter for an out-of-state client is not, *standing alone*, sufficient to create personal jurisdiction over the lawyer in the client's home jurisdiction. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985), the Supreme Court specifically held that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." Instead, the contract's

12

"negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" … "must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. [6]

The Court finds persuasive the court's analysis in *Sher v. Johnson*. In that case, the court found that "out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state," nor does "purposeful availment" follow from a few occasional meetings related to the engagement. *Sher*, 911 F.2d at 1363–66. ("[O]n three occasions Johnson travelled to Los Angeles to meet with the Shers … in connection with … the representation. … It may be said, of course, that by coming to California … the partnership conducted its business in that state. We do not believe, however, that in the context of the 'parties' actual course of dealing,' *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185, the partnership was availing itself of any significant California privilege by coming into the state to talk to its client. The three trips … appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida. We find these contacts too attenuated to create a 'substantial connection' with California.").

---

[6] In *Burger King*, the Florida district court was ultimately found to have personal jurisdiction over the defendant Michigan franchisee because "he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida" even though he never did business outside Michigan. Further, in a holding that has relevance to the malpractice allegations against Firm Defendants here, the Supreme Court concluded that "Rudzewicz' refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida. For these reasons it was, at the very least, presumptively reasonable for Rudzewicz to be called to account there for such injuries." *Burger King*, 471 U.S. at 480.

However, in *Sher* the totality of the circumstances connecting the defendants to the Plaintiff's home state (including a California deed of trust that the law firm required to secure their fees) made the exercise of personal jurisdiction proper. The *Sher* court concluded, "[w]e need not decide, however, whether standing on its own, the deed would constitute a 'substantial connection' with California for jurisdictional purposes. For, looking at the partnership's entire 'course of dealing' with the Shers related to this contract, including the calls and letters, the trips and the deed, we conclude that the partnership 'invok[ed] the benefits and protections' of the laws of California for purposes of jurisdiction. *See Burger King,* 471 U.S. at 479, 475, 105 S.Ct. at 2185, 2183 (internal quotations omitted)." *Id*.

Similarly, in this case the entire "course of dealing" among the parties supports the conclusion that at least the Firm and Morin satisfy the requirement of "purposeful availment." Beyond the ongoing and extensive communications into North Carolina over the course of four years and the defense of numerous depositions (which were subject to the oversight of a court in North Carolina), Morin – acting on behalf of the Firm – is specifically alleged to have misrepresented his ability to practice law in Pennsylvania during a phone call with the North Carolina plaintiffs[7] and, perhaps even more importantly, engaged a North Carolina lawyer to provide substantial and ongoing assistance in the litigation. In engaging North Carolina counsel as a material part of the litigation team, Morin and the Firm plainly reached into North Carolina to conduct their business. Thus, considering all the circumstances of the parties' course of

---

[7] Defendants argue that the call in which Morin allegedly misrepresented his authority to practice law in Pennsylvania was not a "solicitation" of the Plaintiffs as clients because he had already been engaged by Travelers. However, whether the call is characterized as initially "soliciting" the business or instead convincing the Plaintiffs to allow the representation to go forward in light of their right to employ counsel on their own, the misrepresentation was, accepting the Plaintiffs' allegations as true together with all reasonable inferences, fundamental to the Firm Defendants being allowed to actually represent the Plaintiffs.

14

dealing,[8] the Court finds that Morin and the Firm 'purposefully avail[ed]' themselves of the privilege of conducting activities in North Carolina.

The second prong of the test for specific personal jurisdiction is whether the plaintiffs' claims arise out of those activities directed at the forum state. Here, the Plaintiffs' claims relate to the alleged lack of appropriate licensing and the incompetence of the Firm Defendants' representation of the Plaintiffs. All of the conduct described above that supports the finding of "purposeful availment" was part of that representation, specifically including the engagement of North Carolina counsel. Defendants ask the Court to parse the Plaintiffs' claims and find that no wrongful conduct (beyond the phone call in which Morin is alleged to have misrepresented his authority to practice in the relevant court) is alleged to have occurred in North Carolina. However, beginning with that phone call, all of the alleged wrongful conduct relates to the legal representation of North Carolina clients and thus can fairly be said to arise from the Firm Defendants' connections to the state. Therefore, Plaintiffs have sufficiently alleged that their claims arise out the defendants' activities connected to North Carolina.

Finally, the exercise of personal jurisdiction would be "constitutionally reasonable."[9] Because Morin and the Firm have purposefully directed their activities to North Carolina,

---

[8] Plaintiffs also argue that the Court should find that the Firm Defendants are connected to North Carolina because the Travelers' insurance policy under which they were engaged was entered into in North Carolina and is governed by North Carolina law. While the Court has considered this fact, it provides relatively little support to Plaintiffs' position as it appears to be an example of a "random, fortuitous and attenuated" connection unrelated to Defendants' own actions that cannot support the exercise of personal jurisdiction.

[9] In determining the constitutional reasonableness of exercising jurisdiction, the Court considers: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *Consulting Engineers,* 561 F.3d at 278-79.

personal jurisdiction is presumptively reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (Where there is "purposeful availment," "it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in that forum as well." (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174)). The burden is thus on the Firm Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477. Defendants have failed to establish that jurisdiction in North Carolina would be so unreasonable as to violate due process.

While Defendants are not residents of North Carolina and litigation in their home state might be more convenient, they are themselves legal professionals who not only chose to do business with out of state clients but also to practice law in Pennsylvania, which is not their state of residence. Further, Defendants (or their malpractice insurer) have engaged North Carolina counsel to provide their representation in this Court, and, of course, the Firm Defendants have already for many years communicated with North Carolina counsel and clients concerning a litigation matter. Finally, North Carolina has an interest in protecting its citizens against legal malpractice, regardless of where the malpractice occurs. Accordingly, the Court finds that jurisdiction in North Carolina would not make the litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King,* 471 U.S. at 478. (internal quotations omitted). Requiring Morin and the Firm to defend themselves in North Carolina would thus not be so unreasonable as to violate due process.

The exercise of jurisdiction being reasonable, and in light of Morin and the Firm's purposeful direction of activities to North Carolina in relation to this lawsuit, the Court finds that it has personal jurisdiction over Morin and the Firm. Also, the Court finds that the M&R's

recommendation that the Defendants' motion to dismiss for improper venue under Rule 12(b)(3) should be denied is correct and should be adopted for the reasons stated in the M&R. *See* Doc. No. 31 at 7-8.

The Court, however, reaches a different conclusion as to Defendant Tipton. Regardless of their alleged joint liability, jurisdiction over each defendant must be established individually. *See Rush v. Savchuk,* 444 U.S. 320 (1980) ("The requirements of *International Shoe ...* must be met as to each defendant."). Defendant Tipton is alleged to be the managing partner or member of the Firm as well as counsel of record in the underlying litigation. While each law firm partner / member is generally an agent of the firm for the purpose of its business, he is not ordinarily an agent of the other members or partners. Thus, a member's actions may be imputed to the LLC for the purpose of establishing minimum contacts (as well as liability), but ordinarily may not be imputed to the other members. In this case, the Court has jurisdiction over only those individual members who personally established the requisite minimum contacts with North Carolina.

The Court finds that Tipton does not have sufficient connections to North Carolina to support the imposition of personal jurisdiction. Even though Plaintiffs allege that he played an important role in allowing and participating in the malpractice in the underlying litigation, there are no allegations that Tipton was on the initial calls with Plaintiffs in which the engagement was first discussed, later came to North Carolina to meet with the Plaintiffs or was personally involved in the engagement of North Carolina counsel. Rather, beyond participating in communications with the Plaintiffs related to the case, his *personal* role was limited to his supervision of Morin in New Jersey and litigation efforts in Pennsylvania. As discussed above, such contacts alone do not constitute purposeful availment of the privilege of conducting

17

Case 3:20-cv-00314-KDB-DSC   Document 35   Filed 10/22/20   Page 17 of 19

activities in North Carolina. Therefore, the Court cannot properly exercise personal jurisdiction over Tipton.

In summary, although the Court finds that the Firm Defendants' representation of the Plaintiffs in the AFS Litigation does not, standing alone, compel a finding of personal jurisdiction, there are additional circumstances that deepen Morin and the Firm's connection to North Carolina to the point where they are subject to personal jurisdiction and venue is proper in this Court. However, Plaintiffs have not established a prima facie case of jurisdiction as to Tipton and his motion to dismiss will be granted without prejudice to Plaintiffs' right to reassert their claims against him in a proper forum.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The findings and conclusions of the M&R (Doc. No. 31) are **ADOPTED** to the extent described above;

2. Defendants Florio Perrucci Steinhardt & Cappelli, LLC; Florio Perrucci Steinhardt & Fader, LLC; Florio Perrucci Steinhardt Tipton & Talor, LLC and Philip J. Morin, III 's Motion to Dismiss (Doc. No. 12) is **DENIED**;

3. Defendant Brian R. Tipton's Motion to Dismiss (Doc. No. 12) is **GRANTED**;

4. Plaintiffs' claims against Defendant Tipton are **DISMISSED** without prejudice; and

5. All remaining parties to this action are directed to hold their initial attorneys' conference and file a proposed Case Management Order with the Court in accordance with the local rules of this Court on or before November 5, 2020 and

this case shall proceed towards a timely conclusion on the merits of the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Kenneth D. Bell
United States District Judge

Signed: October 22,